### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT OWENSBORO
### CIVIL ACTION NO. 4:05CV-P9-M

**JOE ALEXANDER BROWDER, JR.**                                                  **PLAINTIFF**

**v.**

**NANCY ANKROM,** *et al.*                                                    **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, who is proceeding without the assistance of counsel, filed this civil action seeking monetary and injunctive relief.  The complaint is before the court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997).   Because the plaintiff failed to exhaust his administrative remedies with respect to his individual capacity claims, the court will dismiss those claims from this action.  It will, however, allow some of the official capacity claims to proceed against Daviess County.

### I.  SUMMARY OF CLAIMS

The plaintiff is currently confined at the Daviess County Detention Center ("Detention Center").  He initiated this civil rights action primarily arguing that he has been deprived of much needed medical attention and medication.  To this end, he brings individual and official capacity claims against three Detention Center employees:  Nancy Ankrom, Chief Deputy of Operations; Sara Estes, nurse; and Tammy Buchanan, nurse.

On September 25, 2004, the plaintiff was lodged in the Detention Center following his arrest for unspecified charges.  At the time of his arrest, he states that he was taking various forms of prescribed medication for different medical issues.  One of those medications treated his high blood pressure.  Over the next few months, the plaintiff claims that various Detention

Center officials failed to provide his blood pressure medication.  He filed many medical request forms in addition to grievances over the matter.  The failure to provide him with this medication resulted in his experiencing difficulty with his vision, frequent chest pains, dizziness, and headaches.  After experiencing pronounced distortions in his vision, the plaintiff claims that he was taken to an opthamologist, who found a blood vessel blockage and hemorrhage in the retina to his right eye.  The doctor informed him that such is common in individuals with high blood pressure.

In addition to claims over denied treatment for the high blood pressure, the plaintiff also complains that his requests to fix a broken tooth were ignored, and he complains that he is forced to pay for other medication and booking fees.

### III.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1) and (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v.*

2

*City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### III.  ANALYSIS

The plaintiff brought both individual and official capacity claims.  Official capacity claims are essentially claims asserted against the county itself, *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985), which in this case is Daviess County.  Though the plaintiff did exhaust the administrative grievance process with respect to his denied medication and imposition of additional fees for medication, room and board, none of the grievances charge any of the named defendants with wrongful behavior.  For this reason, the court will dismiss the claims asserted against them individually.  The court believes, however, that some of the official capacity claims should proceed at this time.  Because the plaintiff is a pretrial detainee, it will dismiss his Eighth Amendment claim because its protections extend to convicted prisoners only. It will allow his Fourteenth Amendment due process claim to proceed to the extent that he claims

that he was deprived of medical treatment, but it will dismiss his equal protection claim as well as his due process claim premised on the per diem charges.

**A. Exhaustion of Administrative Remedies**

An inmate is required to exhaust his available remedies prior to filing suit in federal court, and he bears the burden of alleging and showing that he has exhausted those remedies. *See* 42 U.S.C. § 1997e(a)[1] and *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). A primary purpose of the exhaustion requirement is to force an inmate to go through the administrative process so as to give the prison officials an opportunity to take corrective action that would keep the inmate from filing suit. *Porter v. Nussle,* 534 U.S. 516, 525 (2002).

To establish exhaustion, a prisoner must allege and show that all available remedies have been exhausted and attach documentation demonstrating the administrative disposition of his claims. *Brown,* 139 F.3d at 1104. If the prisoner does not possess the documentation to demonstrate exhaustion, he must describe with specificity the administrative proceeding and its outcome. *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert denied*, 531 U.S. 1040 (2000). Should the authorities to whom the inmate has presented his grievance ignore his written plaint, he must proceed to the next level in the grievance process. *Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir. 1999). In the end, a district court must dismiss a complaint without prejudice where a prisoner fails to exhaust those remedies. *Brown,* 139 F.3d at 1102.

---

[1]Section 1997e(a) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title [*i.e.*, 42], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Finally, a prisoner may not simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or it is futile for him to do so because his grievance is now time-barred under the regulation. *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied,* 522 U.S. 906 (1997); *see also Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004) (holding that an inmate "may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until [his] administrative complaints are time-barred. Such a rule would not comport with the purposes of the PLRA ..."). And, the inmate is required to file a grievance against each person he ultimately seeks to sue. *Burton v. Jones,* 321 F.3d 569, 574 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001).[2]

The Daviess County Detention Center has a multi-step grievance mechanism available to all inmates. The inmate must file his grievance on a Grievance Form issued by the jail. In the Grievance Form itself, the inmate must fully set forth the time, date, and name(s) of the prisoner(s) and/or staff member(s) involved in the incident about which he complains. He also must provide the names of witnesses. Once he completes the form, he shall seal it in an envelope and deliver the envelope to a deputy jailer, who must transmit the grievance to the jailer or his designee. Once that person has received the grievance, he must review it to

---

[2]The Sixth Circuit observed:

The requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose a heightened pleading requirement upon would-be §1983 plaintiffs. It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court.

*Curry,* 249 F.3d at 505.

5

determine if the action alleged therein constitutes a "prohibited act by a detention officer or staff member; a violation of the prisoner's civil rights; a criminal act; or an abridgement of inmate privileges as cited in the posted rules."  In the event that the actions of a staff member constitutes prohibited act by a detention officer or staff member, a violation of the prisoner's civil rights, or a criminal act, the jailer or designee must order a prompt investigation.  If the grievance constitutes an abridgment of the prisoner's privileges, the jailer or designee may appoint an impartial member of his staff to investigate the matter and make a report and recommendation. Within seven days following the investigation, the jailer or designee must provide the inmate with a response detailing his findings and actions to be taken.  The inmate may file an appeal which will be reviewed by a higher ranking officer.

Attached to the plaintiff's complaint are copies of grievances that he filed while incarcerated at the Detention Center.  None of those grievances, however, identifies these particular defendants as the subject of the issues he advances here.  As such, he has failed to comply with *Burton* and *Curry*'s requirement to name in his grievances the defendants he ultimately sues in his federal civil rights action.  Because he did not name them in these grievances, his individual capacity claims against these defendants will be dismissed.

The court will allow, however, some of the official capacity claims to proceed.  A municipality may be held accountable although a particular individual defendant is exonerated. *See, e..g, Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985) (noting that notwithstanding the absence of one particular individual government actor being held liable, the "combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights").  Below, the court will separately analyze the

6

substantive claims to determine whether any of the claims will proceed against Daviess County at this time.

**B.  Claims against Daviess County**

The plaintiff claims that the failure to provide him with needed medical treatment and the imposition of fees for his incarceration violate his Eighth Amendment right to be free from cruel and unusual punishment and deprive him of the Fourteenth Amendment's guarantees of due process and equal protection of the laws.

**Eighth Amendment/denial of medical treatment**.  The right to adequate medical care is guaranteed to *convicted* prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment and is made applicable to convicted state prisoners and to *pretrial detainees* by the Due Process Clause of the Fourteenth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 101-02, 104-05 (1976); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  Thus, to the extent that the plaintiff relies upon the Eighth Amendment as a source of his constitutional protection, his reliance is misplaced.

**Fourteenth Amendment/equal protection**.  To the extent that the plaintiff claims that denial of medical treatment deprived him of equal protection of the laws, he has failed to establish such a claim.  The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It "is essentially a direction that all persons similarly situated should be treated alike," *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985), with a purpose "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  *Sioux City Bridge Co. v. Dakota County*, *Neb.,* 260 U.S. 441, 445 (1923).

7

Typically, a plaintiff brings a challenge under the Equal Protection Clause claiming that he, as a member of a protected class, has been subjected to intentional discrimination by state officials. *See, e.g., Jones v. Union County, TN*, 296 F.3d 417, 426 (6th Cir. 2002) (holding that in order to state a claim under the Equal Protection Clause, "Plaintiff must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class.") (citing *Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir.1991)).  However, not all equal protection claims are premised on membership in a protected class.  *Harlen Assoc. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2000) (holding that "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.").  In fact, a plaintiff who merely comprises a class of one may file such a claim which is premised on the allegation that he was treated differently from those similarly situated.  *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (recognizing "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").  Nevertheless, the Equal Protection Clause, in its essence, protects citizens from "intentional and arbitrary discrimination."  *Id.*

Here, the plaintiff's equal protection claim fails.  First, he failed to allege membership in a protected class; so, he cannot establish the first type of equal protection claim outlined above.  And, second, he failed to allege that he has been treated differently from others similarly

8

situated. Thus, he did not establish the second type of equal protection claim outlined above. Because he did not establish an equal protection claim, it will be dismissed.

**Fourteenth Amendment/per diem fees**.  The plaintiff complains that Daviess County by way of the Detention Center is debiting his inmate account by charging him a per diem fee in violation of his due process protections.  It is beyond cavil that inmates possess a protected property interest in their money.  *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir.1997).  Thus, the pertinent query is whether Daviess County has deprived him of that protected property interest without providing him with the requisite procedural safeguards.

A claim premised on the deprivation of property without due process is cognizable in a civil action brought under § 1983.  *Lynch v. Household Finance*, 405 U.S. 538 (1972).  Yet, this court does not believe that the plaintiff was not deprived of a protected property interest.  Very little case law exists in our circuit which addresses a prisoner's due process challenge to an institutional assessment for medical services, booking fees, room and board, and other incidentals.  The few cases which have addressed this precise issue, however, lead this court to conclude that debiting an inmate's account for costs associated with his incarceration does not deprive him of a protected property interest without due process of law.  More specifically, such debits are not "deprivations" in the traditional sense because an inmate has been provided with a service or good in exchange for the money debited.  *See, e.g., Bailey v. Carter*, No. 99-4282, 2001 WL 845446 (6th Cir. July 20, 2001).

In *Bailey,* the prisoner challenged an Ohio statute and rule that required a $3.00 co-payment for certain medical services.  Under the policy, an inmate is notified of the fee at the time services are sought, and the co-pay is debited from his inmate account.  Inmates who

disagree with a charge may file an informal complaint through the institutional grievance system. While the *Bailey* Court recognized that inmates have a property interest in their money, it went on to conclude that they are not "truly 'deprived' of their property" because "the copayment fee was deducted from their accounts in exchange for medical services."  *Id.* at 3 (citing *Jensen v. Klecker*, 548 F.2d 1179, 1183 (8th Cir. 1982) (holding that there was no basis for a due process claim where deduction from prisoner accounts for postage were "assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged)); *see also Stanley v. Ohio Dep't. of Rehab. and Corr.,* 2002 WL 3149435 (S.D. Ohio Aug. 13, 2002) (holding that requiring an inmate to make a $3.00 co-pay for medical treatment does not deprive him of a property interest for "he has exchanged the co-payment for medical services he has either desired or required, and it is likely that the value of the medical services received far exceeds the relatively small co-payment demanded").

While the Sixth Circuit has not specifically applied the reasoning of *Bailey* to a state policy which assessed an inmate's account for the costs of his room and board, it takes no leap of logic to conclude that such a policy would fall within the same analytical framework.  In other words, inmates who are assessed a housing or per diem fee pursuant to a statute or policy are not "truly deprived of their property" because such monies are deducted in exchange for services rendered or goods provided.  *Compare Christianson v. Clarke*, 147 F.3d 655 (8th Cir. 1988) (holding that there was no constitutional impediment to deducting the cost of room and board from a prisoner's wages).  Accordingly, the charging of a per diem for room and board is not in violation of an inmate's federally protected constitutional rights.

10

## IV.  REMAINING CLAIM

At this time, the court will allow the plaintiff's Fourteenth Amendment claim premised on the denial of medical treatment to proceed at this time.  The court will enter a separate order governing the dismissal of some of the plaintiff's claims while another order will set forth the schedule to govern development of the remaining claim.

Date:

cc:     Plaintiff *pro se*
        Defendants
        Daviess County Attorney
        4414.002

11