UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:05CV-P9-M

JOE ALEXANDER BROWDER, JR.                                    PLAINTIFF

v.

NANCY ANKROM, *et al.*                                       DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on Defendants' motion for summary judgment (DN 45),

Plaintiff's motion to supplement his response to Defendants' motion for summary judgment

(DN 49), Plaintiff's motion to compel discovery (DN 50), Plaintiff's motion for entry of medical

records (DN 51), Plaintiff's motion for joinder (DN 53), Defendants' motion to strike (DN 55),

Plaintiff's motion for fast and speedy trial (DN 58), Plaintiff's motion to appoint counsel

(DN 59), and Plaintiff's motion to strike (DN 63) Defendants' motion for summary judgment,

motion to strike, and objection to Plaintiff's motion for joinder.  The Court will attempt to

address these motions in the most logical and efficient order possible.

### I. Procedural Background

Plaintiff, who is proceeding *pro se*, filed this civil action seeking monetary and injunctive

relief.  Plaintiff named Nancy Ankrom, chief deputy of operations at the Daviess County

Detention Center ("Detention Center"), and two Detention Center nurses, Sara Estes and Tammy

Buchanan (Basham), as defendants in both their individual and official capacities.  On initial

review, the Court dismissed Plaintiff's Eighth Amendment deprivation of medical treatment

claim, his Fourteenth Amendment equal protection claim, and his Fourteenth Amendment

challenge to certain per diem charges pursuant to 28 U.S.C. § 1915A(b)(1), and all of his

individual capacity claims against Defendants for failure to exhaust pursuant to

42 U.S.C. § 1997e(a) (DN 10).  The Court allowed Plaintiff's Fourteenth Amendment claims premised on the denial of medical treatment to proceed against Defendants in their official capacities only.  The parties have now engaged in written discovery on that claim, and Defendants have moved for summary judgment.  The parties have also filed various other non-dispositive motions.

## II.  Pending Motions

### A.    Plaintiff's Motion To Supplement His Response To Defendants' Summary Judgment Motion

Defendants filed their motion for summary judgment (DN 45) on December 19, 2005. Plaintiff filed a timely response on December 30, 2005 (DN 46).  As permitted by the Local Rules, Defendants elected not to file a reply memorandum.  *See* LR 7.1(c)(2).  On February 15, 2006, Plaintiff filed a motion to supplement his response to Defendants' summary judgment motion (DN 49).  In the motion, Plaintiff requests the Court to allow him to supplement his summary judgment response with an affidavit signed by Plaintiff.  The affidavit basically restates the same facts and arguments that Plaintiff advanced in his response.  Because the affidavit does not contain any new facts or legal arguments, the Court does not believe that Defendants would be prejudiced by it.  Additionally, the Court notes that Defendants did not file a memorandum opposing Plaintiff's motion.  According to the Local Rules, "[f]ailure to file an opposing memorandum may be grounds for granting the motion."  LR 7.1(c)(1).  Thus, for the reasons set forth above, the Court will grant Plaintiff's motion to supplement and will consider the attached affidavit as if it were filed with Plaintiff's memorandum opposing summary judgment.

**B.**     **Plaintiff's Motion To Compel & Motion For Entry Of Medical Records**

On March 1, 2006, Plaintiff filed a motion asking the Court to compel Plaintiff's former physician, Dr. Ted M. Richardson, to comply with a subpoena Plaintiff sent to him on January 31, 2006, for the production of Plaintiff's medical records (DN 50).  On March 15, 2006, Plaintiff notified the Court that Dr. Richardson had complied with Plaintiff's subpoena (DN 51). Thus, it is appears that Plaintiff's motion to compel is moot, and the Court will deny it on that basis.

Plaintiff also requests that the Court enter his medical records into the record (DN 51). Discovery materials generally are not to be filed with the Court until they are used in the proceeding.  *See* Fed. R. Civ. P. 5(d).  Because it appears that Plaintiff's medical records are pertinent to the summary judgment proceeding, the Court will grant Plaintiff's request.  The documents, which have already been filed with the Court (DN 52), may remain part of the record.

**C.**     **Plaintiff's Motion For Joinder**

On April 24, 2006, Plaintiff filed a "motion for joinder" seeking to amend his complaint to add additional claims against the existing defendants in both their individual and official capacities and to add two additional defendants, Kenneth V. Anderson, Jr., the McCracken County Public Guardian and Administrator, and Mr. Anderson's "employer and respondent superior," McCracken County, Kentucky (DN 53).

According to Plaintiff, he was awarded a pension in April of 2002, and several months later Mr. Anderson was appointed fiduciary over Plaintiff's pension funds.  Plaintiff alleges that Mr. Anderson breached his fiduciary duties to Plaintiff by misappropriating Plaintiff's funds.

Plaintiff further alleges that Mr. Anderson "conspired with the other Defendants in this action, Nancy Ankrom, Sara Estes, and Tammy Buchanan (Basham) to attempt to cause my death deliberately by withholding my blood pressure medicines as stated in my other pleadings." Plaintiff claims that the purpose of the conspiracy was so that Defendants and Mr. Anderson could obtain Plaintiff's pension after his death and collect on a life insurance policy.

### 1.     Conspiracy To Commit Murder Claim Against Existing Defendants

The procedure to file an amended complaint is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.  Where, as here, the defendants have already responded to the original complaint, the plaintiff can amend only by leave of the court.  Rule 15(a) provides, however, that such "leave shall be freely given when justice so requires."  In *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001), the Sixth Circuit listed several factors to consider in deciding whether to allow an amendment:  "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."

In this case, Plaintiff's motion to amend comes fairly late in the proceedings.  Indeed, Plaintiff did not file his motion to amend until well after discovery had closed and the deadline to file dispositive motions had passed under the Court's scheduling order (DN 11).  The additional claim Plaintiff wishes to assert against Defendants, conspiracy to commit murder, is sufficiently different from his current claims against Defendants that it is not the type of claim that they should have anticipated.  Thus, if the Court were to grant the amendment it would also have to allow for additional discovery to avoid undue prejudice to Defendants.  This weighs in favor of denying the motion.  *See Duggins v. Steak'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.

4

1999) ("Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the [] claim that was before the court.").

Additionally, even if Defendants would not be prejudiced by the proposed amendment, the Court believes that the amendment would be futile.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)).  Plaintiff's allegations that the existing Defendants engaged in a conspiracy to murder him are vague, conclusory, and totally unsupported by any facts or evidence.  In fact, Plaintiff has not alleged any facts that show that Defendants have ever communicated with Mr. Anderson or even know him for that matter.  In short, Plaintiff's proposed amendment is insufficient to state a claim under § 1983 for conspiracy to commit murder against any of the existing Defendants.  As such, the Court will deny Plaintiff's request for leave to amend his complaint to include this claim against the existing Defendants.

### 2.    Joinder Of Mr. Anderson & McCracken County As Defendants

Federal Rule of Civil Procedure 20 provides, in relevant part, that "all persons . . . may be joined in one action as defendants if . . . any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20.  After a suit has already been commenced, an amendment changing, adding, or dropping parties requires leave of Court under Fed. R. Civ. P. 21.  In this case, Plaintiff fails to meet the requirements of Rule 20 because

5

his claims against Mr. Anderson and McCracken County for mismanaging/misappropriating his pension do not involve common questions of fact or law as related to Plaintiff's claims against the existing Defendants for denial of medical treatment.  Therefore, the Court will deny Plaintiff's motion to join Mr. Anderson and McCracken County as defendants in this action.

**D.**     **Motions To Strike**

Rule 12(f) provides, "upon motion made by a party. . ., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted." *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 887 (S.D. Ohio 1999).  "The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the kind of language used or that the allegations are unmistakably unrelated to the subject matter." *Pessin v. Keeneland Ass'n*, 45 F.R.D. 10, 13 (E.D. Ky. 1968).

**1.**     **Defendants' Motion To Strike**

Defendants have moved the Court to strike Plaintiff's motion for joinder from the record on the basis that it is scandalous in nature insomuch as the document accuses Defendants of conspiracy to commit murder.  This is one of those rare instances where the Court believes that the pleading should be stricken.  The allegations of conspiracy to commit murder are clearly injurious to Defendants, and Plaintiff has put forth nothing other than pure speculation and conjecture to support them.  Accordingly, the Court will grant Defendants' motion to strike the entire pleading from the record.

6

### 2. Plaintiff's Motion To Strike

Plaintiff has moved the Court to strike Defendants' motion for summary judgment, Defendants' objection to Plaintiff's motion for joinder, and Defendants' motion to strike on the basis that they lack merit and were filed primarily for the purpose of delay (DN 63). The fact that Plaintiff does not agree with Defendants' arguments is not a valid basis to strike these documents from the record. Plaintiff has failed to point to any clearly irrelevant, injurious, or scandalous matters in the documents. As such, the Court will deny Plaintiff's motion to strike.

### E. <u>Defendants' Motion For Summary Judgment</u>

Plaintiff alleges that Defendants' (1) failure to provide him with his blood pressure medication as prescribed; and (2) to properly monitor his blood pressure caused irreparable damage to Plaintiff's right eye. For the most part, the parties have focused almost exclusively on the first claim and ignored the latter. As explained below, however, the Court has concluded that because only Plaintiff's official capacity claims are at issue, Defendants are entitled to summary judgment on the first claim (Defendants failure to provide Plaintiff with his blood pressure medication). The second claim (Defendants failure to monitor Plaintiff's blood pressure) is more problematic. The Plaintiff has not sufficiently articulated his theory of liability for this claim and Defendants failed to address it in their summary judgment brief. The Court needs more information in order to be able to reach a determination as to this claim. As such, the Court will allow the parties an opportunity to provide the Court with additional briefing as related to this claim before determining whether it can proceed past summary judgment.

### 1. Factual Background

On September 25, 2004, Plaintiff was lodged in the Daviess County Detention Center as

a pretrial detainee following his arrest for unspecified charges.[1]  At the time of his arrest, Plaintiff states that he was taking various forms of prescribed medication for different medical issues (DN 1).  Two of those medications, Propranolol and Hydrochlorothiazide, treated Plaintiff's high blood pressure.  Over the next few months, Plaintiff claims that various Detention Center officials failed to provide his blood pressure medication and failed to monitor his blood pressure on a daily basis per his doctor's orders.  He filed many medical request forms in addition to grievances over the matter.

Sometime in the fall of 2004, Plaintiff began to experience difficulty with his vision, frequent chest pains, dizziness, and headaches.  He reported these problems to the medical staff at the Detention Center.  Finally, after experiencing pronounced distortions in his vision, Plaintiff claims that he was taken to an opthamologist on December 6, 2004, who found a blood vessel blockage and hemorrhage in the retina to his right eye.  Plaintiff's medical records confirm that:  "On examination [Plaintiff] was found to have 10/400 vision in the right [eye] and 20/20 in the left."  The doctor informed Plaintiff that his condition could have been caused by "poorly controlled hypertension."  Plaintiff alleges that he was advised by his doctor that his vision will never improve in his right eye and that he is now considered to be legally blind in that eye.  Plaintiff alleges that Defendants' failure to provide him with his blood pressure medication as prescribed and to properly monitor his blood pressure caused this damage.

Defendants acknowledge that they failed to provide Plaintiff with his blood pressure medication "for a brief period of time in November."  Otherwise, Defendants maintain that

---

[1]The Kentucky Department of Corrections maintains an "Online Offender Lookup System," http://www.corrections.ky.gov/kool.htm.  This website indicates that Plaintiff was convicted in May of 2005 and was subsequently transferred from the Daviess County Detention Center to the Blackburn Correctional Complex in Lexington, Kentucky.

Plaintiff's medication was dispensed to him on a "regular" basis.  As Plaintiff points out, however, his medical records indicate that there were several instances where Plaintiff either did not receive his medication at all or where he only received the Propranolol once, not twice, a day as required by his prescription.  Furthermore, while the Detention Center logs indicate that Plaintiff refused to allow Defendants to take his blood pressure on most occassions, Plaintiff vehemently denies that this ever occurred.  In fact, Plaintiff maintains that "whenever he would ask to have his blood pressure checked during medical call, the deputy always said the blood pressure cuff was 'not on the medicine cart.'"  Plaintiff claims that he was later told by Deputy Tidwell that this was because "most of the deputies did not know how to take blood pressure" (DN 1).

In addition to claims over denied treatment for the high blood pressure, Plaintiff also complains that his requests to fix a broken tooth were ignored by Defendants and that he did not receive his allergy medications regularly.

### 2.      Standard Of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she

has the burden of proof.  *Id.* at 325.

Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his or her case with respect to which he or she bears the burden of proof.  *Id.* at 322.  The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  "Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint or additional affidavit . . . satisfies the burden of the nonmovant to respond."  *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001).  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 3.    Analysis

Only Plaintiff's official capacity claims against Defendants are at issue.  If an action for monetary damages is brought against an official of a governmental entity in his "official capacity," the suit should be construed as brought against the governmental entity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Therefore, in the case at bar, Plaintiff's official capacity claims against Defendants are actually brought against Daviess County.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address both issues.

### a.    Constitutional Violation

For a claim under 42 U.S.C. § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)) (quotations omitted). In the current case, Plaintiff asserts that Defendants deprived him of his constitutional rights by failing to provide for his serious medical needs. Because the Eighth Amendment does not apply to pretrial detainees, such as Plaintiff, the right to adequate medical treatment attaches through the Due Process Clause of the Fourteenth Amendment, which affords pretrial detainees rights "analogous" to those of prisoners. *Watkins*, 273 F.3d at 685-86 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983)). Because the rights are analogous, case law dealing with Eighth Amendment claims is instructive.

To sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An Eighth Amendment claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"[T]he evidence need only show that 'the medical *need* at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (emphasis added) (quoting *Farmer*, 511 U.S. at 834).

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898. However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Blackmore*, 390 F.3d at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).

Examples of the latter branch include claims of "delayed administration of medication . . . . or occasional missed doses of medication," *Blackmore*, 390 F.3d at 897; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately[,] or whether any delay in providing medical care was harmless." *Id.* In such circumstances, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898 (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill*, 40 F.3d at 1188)). However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899-900 (citation omitted). "Instead, it is sufficient to show that he

12

actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Estelle*, 429 U.S. at 106. The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Id.* at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis fail to state a cause of action. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. And a patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).

Deliberate indifference, however, "'may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Moreover, '[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may

amount to deliberate indifference.'" *Terrance*, 286 F.3d at 844 (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

Defendants concede in their summary judgment motion that Plaintiff did not receive his blood pressure medication at all for a brief period in November. Moreover, when viewed in a light most favorable to Plaintiff, the evidence tends to show that Plaintiff also failed to receive the Propranolol as prescribed (twice a day) on numerous other occasions, and on at least a few other occasions besides the November dates conceded by Defendants, failed to receive it at all. For example, among other times, the logs indicate that Plaintiff received the Propranolol only once a day on September 26, 27, 28 & 29; October 1, 2, 6, 9, 11, 12, 13, 17, 18, 19, 22, 24, 25 & 30; November 7, 9, 17, 19, 21, 25, 26, 28 & 29; and December 1, 3, 5 & 6; and did not receive it at all on several other dates, including October 20 & 21; November 24 and December 2.[2]  The logs also appear to indicate that for whatever reason Plaintiff did not receive the Hydrochlorothiazide on the following dates:  October 12, 16, 17, 18, 19, 20 & 22; November 7, 23, 24, & 26; and December 2.

Additionally, the facts are disputed as to whether Defendants monitored Plaintiff's blood pressure on a daily basis according to his doctor's orders.  The Court will briefly review the evidence that has been submitted as related to this issue.

The Detention Center logs indicate that Plaintiff's blood pressure was taken only eleven

---

[2]While Defendants submitted Plaintiff's medication logs to the Court in support of their motion for summary judgment, they utterly failed to offer any explanation of the logs' meaning to the Court.  This has made the Court's work on summary judgment exceedingly difficult.  The Court has been required to devote a substantial amount of time to deciphering the logs, which are anything but self-explanatory.  For example, in several instances, neither the taken nor the refused box is checked beside Plaintiff's blood pressure medication.  In other instances, the taken box is checked, but there is a notation beside the box that reads "out."  In the absence of any explanation by Defendants and because it must view the facts in a light most favorable to the non-moving party on summary judgment, the Court assumes that Plaintiff was not offered his blood pressure medications on these occasions.

14

times during the seventy-two day period in question (from the date of Plaintiff's arrest on September 25, 2004, through the time he was taken to the opthamologist on December 6, 2004): September 27; October 6, 10, 23,[3] 28, 29 & 31; and November 3, 7, 13 & 16.  Even though the logs indicate that the deputies should also "record the readings" in the log book, only three of these eleven entries, the September 27 and October 28 & 29 entries, list Plaintiff's blood pressure readings.  Defendants have not offered any explanation why the readings were not recorded after they were taken by the deputies.  If viewed in a light most favorable to Plaintiff, this could tend to suggest that either no readings were actually taken on the eight other dates or that on these dates, the deputies attempted to take readings but were unable to do so for some reason.[4]

Neither the taken nor the refused box was checked for blood pressure on the following dates:  September 28 & 29; October 3, 4, 5 & 22; November 1, 5, 11, 12, 15, 17, 20, 22, 23, 24, 25, 27, & 29; and December 1, 2, 3, 4, 5, & 6.[5]  Again, Defendants do not offer any explanation why neither box was checked on these dates.  Viewed in the light most favorable to Plaintiff, which it must be on summary judgment, this evidence suggests that for whatever reason Defendants failed to take Plaintiff's blood pressure on these dates.

---

[3]Both the taken and the refused boxes were checked for this date.

[4]Again, the Court has been left to speculate as to the meaning of the records submitted by the parties.  Defendants submitted only the medication logs to the Court on summary judgment.  These logs contain entries for blood pressure checks and state that Plaintiff's blood pressure should have been recorded in the log book.  In support of his pretrial memorandum, Plaintiff submitted a separate blood pressure log (DN 42, Ex. 18 B).  The Court is somewhat confused by the existence of this separate log.  While this log is difficult to read, it indicates that Plaintiff's blood pressure was taken only eight times:  September 27; October 4, 6, 7, 28 & 31 and November 7 & 13.  The two logs are also clearly inconsistent in certain other respects.  For example, on October 7 the medication log indicates that Plaintiff refused to allow Defendants to take his blood pressure, but the blood pressure log indicates it was taken on this date.

[5]There appears to be no blood pressure entry pages for November 6, 14, 18 & 26.  The Court, therefore, treated these dates as neither clearly taken nor refused dates.

15

Finally, the refused box is checked on September 30; October 1, 2, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26, 27 & 30; and November 2, 4, 8, 9, 10, 19, 21, 28 & 30. Plaintiff vehemently denies that he ever refused to allow Defendants to take his blood pressure and states that he would not have filed a medical request for his blood pressure to be taken regularly and then later refused it.[6]  In fact, Plaintiff claims that he affirmatively requested the deputies to take his blood pressure during their rounds on several occasions and was repeatedly told that the blood pressure cuff was not on the medicine cart.  The Court also notes that it appears that the deputies sometimes checked the "refused" box for situations other than clear inmate refusal.  For example, on October 12, 2004, the logs indicate that Plaintiff ran out of his blood pressure medication.  The deputy in charge of dispensing medication on that date checked the refused box.  Clearly, if the medication was not on the cart, Plaintiff could not have refused to take it.  This casts doubt on whether Plaintiff also actually refused to allow to have his blood pressure to be taken, or whether, as Plaintiff argues, the blood pressure cuff was not on the cart.

In light of these facts, the Court concludes that Plaintiff has asserted facts and presented documentation from which a jury could reasonably conclude that Defendants wholly failed to treat his blood pressure and were thus deliberately indifferent to a serious medical need.  *See Jackson v. Fauver*, 334 F. Supp. 2d 697, 728-29 (D.N.J. 2004) ("Genuine issues of material fact also exist with regard to the treatment Muhammad received for his high blood pressure and cardiac problems. . . .This genuine dispute of material fact should not be resolved on a motion for summary judgment.").

---

[6]For example, on December 9, 2004, Plaintiff filed an appeal of his original grievance stating that his blood pressure was still not being monitored regularly (DN 1, Ex. 12).  He again stated on January 2, 2005, that: "My blood pressure is not being checked on Tuesday, Thursday or any other day.  Whenever I ask I am told by the deputy that the cuff is not on the cart" (DN 42, Ex. 17).

16

As for Plaintiff's allergies, it appears from examining his grievances that his symptoms primarily involved a runny nose, sneezing and itching (DN 1, Ex. 4).  Plaintiff, however, failed to place any verifying medical evidence as to this condition in the record.  Furthermore, while it appears that Plaintiff did miss several doses of his allergy medicine, based on the evidence in record, the Court concludes that Plaintiff cannot establish that his allergies amounted to a serious medical condition.  *See Cantoral v. Kyle*, No. 6:05cv87, 2005 U.S. Dist. LEXIS 37359 (E.D. Tex. June 30, 2005) ("Allergies are not the type of medical problem that trigger the protection of the Constitution.").

The record is likewise sparse regarding Plaintiff's complaints related to his cracked filling.  His grievance indicates that he advised Defendants that he broke his filling while eating a "Star Crunch."  He was advised by Defendants not to chew on the sensitive side (DN 1, Ex. 5). It is unclear whether Plaintiff was ever taken to the dentist in relation to his tooth.  However, he has not alleged that the cracked filling caused him any pain or associated problems.  In the absence of such evidence, the Court concludes that Plaintiff has not demonstrated that his cracked filling amounted a serious medical condition.[7]

**b.** **Municipal Liability**

"A plaintiff seeking to hold a municipality liable under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "Locating a 'policy' ensures that a

---

[7]Because the Court has concluded that Plaintiff's allergies and cracked filling do not constitute serious medical conditions in this case, there is no reason for the Court to analyze these claims any further.  The Court notes, however, that Plaintiff has failed to identify any official policies or customs as related to these claims.  As such, even if these conditions did constitute serious medical conditions, Plaintiff would not be able to overcome summary judgment on these claims.  *See infra,* section II.E.3.b.

municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04. "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. "Beyond having to identify 'conduct properly attributable to the municipality itself,'" *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404), a plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Cherrington*, 344 F.3d at 645 (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404) (internal quotation marks omitted).

Defendants argue that Plaintiff cannot show that any policy or custom led to his missed doses of blood pressure medication. Defendants presented evidence in support of their summary judgment that the Detention Center has a policy for ordering and dispensing inmate medication. If followed, it appears that this policy is likely constitutionally sound. However, in Plaintiff's case it appears that for whatever reason the policy was not properly adhered to leading to several missed doses of medication. Based on these facts, Defendants claim that at most all Plaintiff could ever prove is "that one or more detention personnel was perhaps careless in getting his blood pressure medication timely refilled." The Court agrees with Defendants on this point. The Plaintiff has failed to connect his missed doses of blood pressure medication with any official policy or custom. Thus, while the facts in this case might have supported the imposition of individual liability against one or more of the Defendants or other Detention Center

18

employees, they are not sufficient to impose liability against the municipality itself.[8]

The same cannot necessarily be said for Plaintiff's claim that Defendants failed to properly monitor his blood pressure.  From the record, it appears that the deputies distribute medication to inmates three times a day, (DN 45, Ex. A at p. 1), and are also in charge of monitoring blood pressure (and presumably other vital statistics) during this time.  Plaintiff's Detention Center medical logs, (DN 45, attached medical record logs), begin on September 26, 2004, the day after he was arrested.  The logs indicate that the Detention Center was aware of Plaintiff's hypertension and that, at least initially, Plaintiff's blood pressure should have been monitored and recorded daily.  It appears from the logs, however, that for whatever reason Plaintiff's blood pressure was not monitored on a daily or even regular basis.  Unfortunately, the logs do little to explain the reason for this failure.

Plaintiff alleges that he was told by Deputy Tidwell that the blood pressure cuff was not placed on the medicine cart because the other deputies did not know how to take blood pressure readings.  Thus, it appears that Plaintiffs may be attempting to hold Defendants liable for the failure to monitor his blood pressure based on a failure-to-train theory.[9]  This claim, however, has not been adequately briefed.  Plaintiff devoted scarce attention to it in his pre-trial

---

[8]The Court dismissed Plaintiff's individual liability claims *without prejudice* because Plaintiff failed to exhaust those claims prior to filing suit (DN 10).

[9]"The courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability."  *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006).  The United States Supreme Court holds that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  In *Canton*, the plaintiff alleged that the municipality's failure to adequately train its police officers resulted in a violation of her right to receive medical attention while in custody.  *Id.* at 381.  In remanding her case for further consideration, the Supreme Court stated that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can be said to have been deliberately indifferent."  *Id.* at 390.

memorandum and Defendants did not address it in their memorandum in support of summary judgment (although Defendants' summary judgment motion was directed at all claims).  As such, the Court would like additional briefing on this claim prior to deciding whether it can survive summary judgment.  The Court will enter a separate order setting out a supplemental briefing scheduling  for this claim.

**F.**      **Motion to Appoint Counsel**

On June 12, 2006, Plaintiff filed a motion asking the Court to appoint counsel to represent him in this action (DN 59).  Plaintiff asserts that he needs counsel because he is not trained in the law and because the prison law library has a sparse collection of materials and his library time is limited.

Prisoners do not possess a constitutional right to the appointment of counsel in a civil case.  *See Lavado v. Keohane*, 922 F.2d 601, 605 (6th Cir. 1993).  Rather, appointment of counsel lies exclusively within the Court's discretion.  *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel.").  Furthermore, appointment of counsel is justified only in exceptional circumstances.  *Id.*  To determine whether exceptional circumstances exist, the Court must consider the complexity of the issues involved and the ability of Plaintiff to represent himself.  *Id*.

The Court does not find that the complexity of the legal issues at this stage in this case necessitates the appointment of counsel.  The Court is requesting additional briefing on only one claim and based on the pleadings filed thus far, it appears that Plaintiff is familiar with the workings of the legal system and is able to represent himself.  His pleadings are generally articulate, reflecting Plaintiff's ability to express himself to the Court.  Thus, the Court concludes

20

that Plaintiff has not set forth any exceptional circumstances warranting appointment of counsel at this time.  Accordingly, the Court will deny Plaintiff's motion for appointment of counsel. Plaintiff is free to request appointment of counsel at a future point in this action, should exceptional circumstances arise to justify such a request.

**G.**     **Plaintiff's Motion For Fast & Speedy Trial**

On May 18, 2006, Plaintiff filed a motion "for fast and speedy trial," in which he asks the Court to promptly rule on all pending motions in this action and also requests a trial by jury (DN 58).

The Court has ruled on all motions pending as of the date of this memorandum opinion, and has requested additional briefing on one claim.  As such, setting a trial date is premature at this time.  Additionally, the Court notes that Plaintiff requested a jury trial in his complaint (DN 1), and on August 18, 2005, at Plaintiff's request, the Court ordered that Plaintiff's request for jury trial should be noted on the docket sheet (DN 29).

Accordingly, because the Court has already provided Plaintiff with the relief requested in this motion related to the pending motions and because setting a trial date at this time is premature, the Court will deny this motion.

The Court will enter an order consistent with this memorandum opinion.

Date:

cc:     Plaintiff, *pro se*
        Counsel of Record
4414.008